IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SCHUTZE SIGNATURE HOMES, LLC, A TEXAS LIMITED LIABILITY COMPANY,<br><br>        Plaintiff,<br><br>V.<br><br>FAIRVIEW INVESTMENT FUND III, LP, BECKHAM CAPITAL GROUP, LLC, AS TRUSTEE UNDER THE DEED OF TRUST, AND JASON KRAUS, AS SUBSTITUTE TRUSTEE,<br><br>        Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | No. 3:19-cv-2405-C |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Schutze Signature Homes, LLC has filed a Motion for Temporary Restraining Order [Dkt. No. 8], which Senior United States District Judge Sam R. Cummings has referred to the undersigned United States Magistrate Judge for hearing and entry of Findings, Conclusions, and Recommendation. *See* Dkt. No. 10 at 1. The referral order also provides that the undersigned "may elect to consider Plaintiff's Motion for Leave to Amend [Dkt. No. 7], as well as Plaintiff's Motion for Remand [Dkt. No. 9], which, if granted, would effectively moot Plaintiff's Motion for Temporary Restraining Order." *Id.* at 1 n.1.

For the reasons explained below, the Court should conclude that Defendants Beckham Capital Group LLC as Trustee under the Deed of Trust and Jason Kraus as

Substitute Trustee were improperly joined and that the Court has subject matter jurisdiction over this removed action and the Court should deny Plaintiff's Motion for Temporary Restraining Order [Dkt. No. 8].

## Background

Plaintiff purchased real property located in Dallas County, Texas, on February 28, 2018. *See* Dkt. No. 1 at 17-36. To finance the purchase, Plaintiff and Fairview entered a Loan and Security Agreement, which was secured by a Deed of Trust, a Secured Promissory Note, a Collateral Assignment and Security Agreement, and Personal Guarantees by Nolan Schutze and Hope Schutze (the "Loan Documents"). *See id.* at 38-171.

On September 4, 2019, Fairview noticed the property for foreclosure. The foreclosure sale was scheduled for October 1, 2019. *See id.* at 184-89.

On September 30, 2019, Plaintiff filed suit in state court to stop the foreclosure. Plaintiff sued the lender, Fairview; the trustee under the deed of trust, Beckham Capital Group, LLC; and the substitute trustee, Jason Kraus. *See id.* at 17- 36; *see also* Cause No. DC-19-15873 in the 192nd Judicial District Court of Dallas County, Texas. Plaintiff alleged that it is a Texas limited liability company; that Fairview is a foreign limited partnership organized and existing under the laws of Delaware with its home office in Seattle, Washington; that Beckham is a Texas limited liability company; and that Krause is an individual residing in Texas. *See id.* at 18.

Also on September 30, 2019, the state court entered an amended temporary

-2-

restraining order to prevent Defendants from "[t]aking any action to foreclose on the property." *See id.* at 267-69.

On October 10, 2019, Defendants Kraus and Beckham filed verified denials in state court, asserting that they were not liable in the capacities in which they had been sued as substitute trustee and trustee, respectively. *See id.* at 270-73.

Then, also on October 10, 2019, Defendants removed the case to this Court on the basis of diversity jurisdiction. *See* Dkt. No. 1. According to the notice of removal, Plaintiff "is a Texas limited liability company and upon information and belief, its members are Texas residents," and Fairview "is a foreign limited partnership organized and existing under the laws of the State of Delaware, whose home office is located at...Seattle, Washington." *See id.* at 4. Defendants contend that diversity exists because the in-state defendants – Beckham and Krause – were improperly joined.

On October 14, 2019, Fairview again noticed the property for foreclosure. The foreclosure sale was scheduled for November 5, 2019. *See* Dkt. No. 8-1 at 272-75.

On November 1, 2019, Plaintiff filed a motion for temporary restraining order to stop the scheduled November 5, 2019, foreclosure sale. *See* Dkt. No. 8. Plaintiff also filed a motion to remand, *see* Dkt. No. 9; a motion to amend the original petition, *see* Dkt. No. 7; and a motion for order to show cause concerning alleged violations of the September 30, 2019 amended temporary restraining order, *see* Dkt. No. 6.

On November 4, 2019, Judge Cummings referred the motion for temporary restraining order to the undersigned, *see* Dkt. No. 10; Fairview filed a response, *see* Dkt.

No. 11; and the undersigned heard oral argument, *see* Dkt. No. 12.

After oral argument, the undersigned directed the parties to file supplements to Plaintiff's Motion to Remand and Defendants' Notice of Removal to provide all necessary information regarding the parties' citizenship as required for diversity jurisdiction. *See* Dkt. No. 13. Plaintiff filed a Supplement to Plaintiff's Motion to Remand that explained:

> 1. Plaintiff Schutze Signature Homes, LLC is a single member Texas Limited Liability Company. It was formed in Texas, does business in Texas, and has its principal office in Texas. The single member is an individual, Nolan Schutze, who is a resident and citizen of the State of Texas.
> 2. Defendant Jason Kraus is an individual, who is a resident and citizen of the State of Texas. Mr. Kraus has admitted before this Court, on November 4, 2019, that he is a citizen of the State of Texas.
> 3. Defendant Beckham Capital Group, LLC is a Texas Limited Liability Company, which was formed in Texas, does business in Texas, and has its principal office in Texas. To the best of Plaintiff's knowledge, it is a single member entity, owned by Mr. Beck Beckham, who is a resident and citizen of the State of Texas.
> 4. Defendant Fairview Investment Fund III, LP is a Delaware Limited Partnership whose principal place of business is at 119 S. Main Street, Suite 410, Seattle WA 98140. To the best of Plaintiff's knowledge, Defendant Fairview does not have any filings on file with the Texas Secretary of State. Other than the transaction forming the basis of this transaction, Plaintiff does not know if Defendant Fairview regularly conducts business in the State of Texas. Plaintiff does not have any personal knowledge who the partners of Defendant Fairview may be.

Dkt. No. 14 at 1-2.

Defendants filed a Response to Plaintiff's Motion to Remand, *see* Dkt. No. 15, and attached an Unsworn Declaration of Carson Rasmussen Regarding Citizenship of Membership and Jurisdictional Facts of Defendants, which explained:

> 1. My name is Carson Rasmussen, I live in Seattle, Washington and I

declare under 28 U.S.C. §1746 that the foregoing is true and correct.

2. Defendant, Fairview Investment Fund III, LP ("Fairview") is a foreign limited partnership organized and existing under the laws of the State of Delaware, whose home office address is located at 119 S. Main Street, Suite 410, Seattle WA 98104.

3. Upon information and belief, Defendant Beckham Capital Group, LLC is a Texas limited liability company. Its sole member is Ellis E. Beckham, III whom I believe to be a Texas resident. Mr. Beckham's name was inserted on the Deed of Trust at issue in this case as "Trustee" simply as a placeholder. He may have never even known he was the named Trustee and certainly performed no services for Fairview in this capacity.

4. Defendant Jason Kraus is a Texas resident and our local counsel.

5. Below are the partners of Fairview:

a. General Partner - Fairview Partners Investment Management, LLC. The LLC has two members: Nels Stemm (WA resident) and myself, Carson Rasmussen (WA resident).

Dkt. No. 15-1 at 1-2. Defendants further report that, as Mr. Rasmussen reports, *see id.* at 2-5, none of the limited partners of Defendant Fairview Investment Fund III, LP "are Texas residents. Therefore, for purposes of citizenship, Defendant Fairview is a resident of the State of Washington and the various states of its partners." Dkt. No. 15 at 2; *see generally Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 571 (5th Cir. 2011) (per curiam) (explaining that "[e]vidence of a person's place of residence" serves as "prima facie proof of his domicile" for 28 U.S.C. § 1332's purposes).

## Legal Standards

I.   <u>Subject matter jurisdiction</u>

Federal courts have an independent duty to examine their own subject matter jurisdiction. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-84 (1999); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005) ("[A]ny federal court may raise subject matter jurisdiction *sua sponte*.").

A defendant may remove an action filed in state court to federal court if the action is one that could have originally been filed in federal court. *See* 28 U.S.C. § 1441(a). And a defendant may remove a case that includes a claim arising under the Constitution, laws, or treaties of the United States (within the meaning of 28 U.S.C. § 1331) and a claim not within the Court's original or supplemental jurisdiction or that has been made nonremovable by statute, so long as the action would be removable without the inclusion of the nonremovable claim. *See id.* § 1441(c)(1). Statutes that authorize removal are meant to be strictly construed, and any doubt as to the propriety of removal should be resolved in favor of remand. *See Hood ex rel. Miss. v. JP Morgan Chase & Co.*, 737 F.3d 78, 89 (5th Cir. 2013); *In re Hot-Hed Inc.*, 477 F.3d 320, 323 (5th Cir. 2007).

The removing party bears the burden of establishing jurisdiction. *See Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 417 (5th Cir. 2001). A federal court's jurisdiction is limited, and federal courts generally may hear a case of this nature only if it involves a question of federal law or where diversity of citizenship exists between the parties. *See* 28 U.S.C. §§ 1331, 1332. "As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). "[T]he basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference." *Ill. Cent. Gulf R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 (5th Cir. 1983) (citation and internal quotation marks omitted).

28 U.S.C. § 1332 creates federal subject matter jurisdiction where diversity of citizenship exists between the parties, where each plaintiff's citizenship is diverse from each defendant's citizenship, and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1332(a), (b). Failure to allege adequately the basis of diversity requires remand. *See Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 805 (5th Cir. 1991). If no amount of damages has been alleged in the state court petition, the defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum. *See* 28 U.S.C. § 1446(c)(2); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1409 (5th Cir. 1995). And, where diversity jurisdiction requires that the parties be "citizens of different States," 28 U.S.C. § 1332(a)(1), the Court cannot exercise jurisdiction if any plaintiff shares the same citizenship as any defendant, *see Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003). "For diversity jurisdiction, the party asserting federal jurisdiction must distinctly and affirmatively allege [ ] the citizenship of the parties." *Howery*, 243 F.3d at 919.

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

"When a defendant removes a case to federal court on a claim of improper joinder, the district court's first inquiry is whether the removing party has carried its heavy burden of proving that the joinder was improper. Indeed, until the removing party does so, the court does not have the authority to do more; it lacks the jurisdiction to dismiss the case on its merits." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 576 (5th Cir.

2004) (en banc). "In every case where a diverse defendant proves that the plaintiff's decision to join an in-state party is improper, the diverse defendant gains access to the federal courts. If, however, the foreign defendant fails to prove the joinder improper, then diversity is not complete, the diverse defendant is not entitled to remove, and remand is mandated." *Id.* at 575.

A defendant alleging that a non-diverse defendant is improperly joined has the heavy burden of "demonstrating either '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 532 (5th Cir. 2006) (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)).

Where there is no dispute or allegation of actual fraud concerning the fact that both plaintiff and a defendant are citizens of the same state, the sole concern is whether, as a matter of law, the plaintiff can establish a valid state-law cause of action against the non-diverse defendant. *See Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999).

Under this second prong of the improper-joinder test, the standard is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against [a non-diverse] defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against [a non-diverse] defendant." *Smallwood*, 385 F.3d at 573. "A mere theoretical possibility of recovery under local law will not preclude a finding of improper

joinder." *Id.* at 573 n.9 (internal quotation marks omitted).

But the United States Court of Appeals for the Fifth Circuit has further instructed that, "[s]ince the purpose of the improper joinder inquiry is to determine whether or not the in-state defendant was properly joined, the focus of the inquiry must be on the joinder, not the merits of the plaintiff's case." *Id.* "The burden on the removing party is to prove that the joinder of the in-state parties was improper – that is, to show that sham defendants were added to defeat jurisdiction," such that "[a] showing that the plaintiff's case is barred as to all defendants is not sufficient" and, "[w]hen the only proffered justification for improper joinder is that there is no reasonable basis for predicting recovery against the in-state defendant, and that showing is equally dispositive of all defendants rather than to the in-state defendants alone, the requisite showing has not been made." *Id.* at 575; *see also id.* at 574 (explaining that, "when, on a motion to remand, a showing that compels a holding that there is no reasonable basis for predicting that state law would allow the plaintiff to recover against the in-state defendant necessarily compels the same result for the nonresident defendant, there is no improper joinder; there is only a lawsuit lacking in merit" and that, "[i]n such cases, it makes little sense to single out the in-state defendants as 'sham' defendants and call their joinder improper" and, "[i]n such circumstance, the allegation of improper joinder is actually an attack on the merits of plaintiff's case as such").

Ordinarily, the court must conduct a Federal Rule of Civil Procedure 12(b)(6)-type analysis, examining the allegations in the complaint to determine whether the plaintiff has stated a claim against the non-diverse defendants. *See Larroquette v.*

*Cardinal Health 200, Inc.*, 466 F.3d 373, 376 (5th Cir. 2006). If, however, the complaint has "omitted discrete facts, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.* But the Fifth Circuit has "caution[ed] that a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the [non-diverse] defendant" and that "any piercing of the pleadings should not entail substantial hearings." *Smallwood*, 385 F.3d at 573-74. "Attempting to proceed beyond this summary process carries a heavy risk of moving the court beyond jurisdiction and into a resolution of the merits, as distinguished from an analysis of the court's diversity jurisdiction by a simple and quick exposure of the chances of the claim against the [non-diverse] defendant alleged to be improperly joined. Indeed, the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden." *Id.* at 574. Further, "[i]n this inquiry the motive or purpose of the joinder of in-state defendants is not relevant." *Id.*

In making the improper-joinder determination, the Court will "evaluate all of the factual allegations in the plaintiff's state court pleadings in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff" and "any ambiguities of state law in the plaintiff's favor" and "then examine relevant state law and resolve all uncertainties in favor of the nonremoving party." *Davidson v. Georgia-Pac., L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016) (internal quotation marks omitted); *Cavallini v. State Farm Mut. Auto. Ins. Co.*, 44 F.3d 256, 260 n.8, 264 (5th Cir.

1995) (quoting *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205–06 (5th Cir. 1983)).

The Fifth Circuit has clarified that the federal pleading standard, not a state pleading standard, applies to determine whether a nondiverse defendant has been improperly joined. *See Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 200-01 (5th Cir. 2016) (abrogating three *post-Smallwood* Fifth Circuit cases applying a state pleading standard instead the federal pleading standard). The "12(b)(6)-type analysis ... is shorthand for the federal pleading standard itself ... promulgated by the Supreme Court in the *Bell v. Twombly* and *Ashcroft v. Iqbal* opinions." *Id.* at 203.

In deciding a Federal Rule of Civil Procedure 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007). To state a claim upon which relief may be granted, Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts

do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, Plaintiffs must allege more than labels and conclusions, and, while a court must accept all of the Plaintiffs' allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.* But, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that Plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. ____, 135 S. Ct. 346, 347 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)). The United States "Supreme Court has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson*, 135 S. Ct. at 347), and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346.

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion.

*Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Although the Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

II.    Temporary restraining order

"To obtain a temporary restraining order, an applicant must show entitlement to a preliminary injunction," and "[t]he same four-factor test for preliminary injunctions also has been extended to temporary restraining orders," because "[a] TRO is simply a highly accelerated and temporary form of preliminary injunctive relief." *Horner v. Am. Airlines, Inc.*, No. 3:17-cv-665-D, 2017 WL 978100, at *1 (N.D. Tex. Mar. 13, 2017) (citations and internal quotation marks omitted). To obtain either, a plaintiff must "show (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public interest." *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 252-53 (5th Cir. 2009) (internal quotation marks omitted); *accord Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).

This is a "difficult" and "stringent" standard for the movant to meet, and the movant bears "the burden of establishing each element." *Whitaker v. Livingston*, 732 F.3d 465, 469 (5th Cir. 2013); *Janvey v. Alguire*, 647 F.3d 585, 591, 595 (5th Cir. 2011). The United States Court of Appeals for the Fifth Circuit has "cautioned repeatedly that a preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *Bluefield*, 577 F.3d at 253 (internal quotation marks omitted). "The

failure of a movant to establish one of the above four elements will result in the denial of a motion for temporary injunction." *Medlin v. Palmer*, 874 F.2d 1085, 1091 (5th Cir. 1989).

## Analysis

I.     Subject matter jurisdiction

Although Plaintiff seeks a TRO to stop the scheduled November 5, 2019 foreclosure, the Court must first determine whether it has subject matter jurisdiction over this removed action. *See Smith v. Bank of Am. Corp.*, 605 F. App'x 311, 314-15 (5th Cir. 2015). That requires the Court to decide whether Defendants have carried their "heavy burden of proving that the joinder was improper" because, unless and until they have done so, the Court "does not have the authority to do more." *Smallwood*, 385 F.3d at 576. And "even a single valid cause of action against [a non-diverse] defendant[] ... requires remand of the entire case to state court." *Gray v. Beverly Enters.-Miss., Inc.*, 390 F.3d 400, 412 (5th Cir. 2004).

Defendants assert that Mr. Kraus, sued as substitute trustee, and Beckham Capital Group LLC as Trustee under the Deed of Trust were improperly joined because each was sued solely as a trustee "since (1) that fact is clearly stated by Plaintiff in the style of his case; and (2) no allegations or causes of action in Section VII of Plaintiff's Original Petition have been asserted against" each of these defendants. Dkt. No. 1 at 5. Defendants make these same assertions in their Verified Denials and Original Answer – filed in state court apparently to comply with Texas Property Code § 51.007(a) and just before Defendants removed the case on October 10, 2019 – and further assert

that:

> Under Texas law, a trustee under a deed of trust is not a necessary party to an action enjoining foreclosure. Further, Defendants deny that Plaintiff's request for injunctive relief is an independent cause of action. Under Texas law, a request for injunctive relief is not itself a cause of action but depends on an underlying cause of action. Therefore, Kraus and Beckham have been improperly and unnecessarily joined in this suit.

Dkt. No. 1, Ex. F at 270 of 273 (citations omitted).

But Texas Property Code § "51.007 'does not ... stand for the proposition that a substitute trustee cannot be sued ever in that capacity or that she must automatically be dismissed simply because she is sued in her capacity as substitute trustee.'" *McIntosh v. U.S. Bank Nat. Ass'n*, No. Civ. A. H-11-3874, 2012 WL 75141, at *4 (S.D. Tex. Jan. 10, 2012) (quoting *Miller v. Chase Home Fin., LLC*, No. 3:09-cv-1503-K, 2010 WL 70089, at *3 (N.D. Tex. Jan. 6, 2010)). Texas law imposes a duty on substitute trustees to "act with absolute impartiality and fairness to the grantor in performing the powers vested in him by the deed of trust," *Marsh v. Wells Fargo Bank, N.A.*, 760 F. Supp. 2d 701, 708 (N.D. Tex. 2011), and that duty is breached when the substitute trustee fails to strictly comply with the notice and sale provisions of Texas Property Code § 51.002, *see McIntosh*, 2012 WL 75141, at *4 (citing *Marsh*, 760 F. Supp. at 708). But "breach of a trustee's duty does not constitute an independent tort; rather, it yields a cause of action for wrongful foreclosure." *Foster v. Deutsche Bank Nat'l Trust Co.*, 848 F.3d 403, 406 (5th Cir. 2017).

Plaintiff did not plead an express cause of action against Mr. Kraus or Beckham in Section VII of Plaintiff's Original Petition. But it did allege in Paragraphs 14, 15, 22,

and 23 of its Plaintiff's Original Petition facts to support allegations that Defendants "have not complied with the default provisions of either the Deed of Trust or Note, given Plaintiff an opportunity to cure, or otherwise complied with their contractual obligations" and that, "[w]ithout doing so, any attempt at foreclosure is wrongful." Dkt. No. 1, Ex. C at 20 of 273, 23-24 of 273.

The Court must determine whether Defendants have met their heavy burden to show that there is no possibility of recovery by Plaintiff against Mr. Kraus as substitute trustee or Beckham Capital Group LLC as Trustee under the Deed of Trust – that is, that there is no reasonable basis for this Court to predict that Plaintiff might be able to recover against Mr. Kraus as substitute trustee or Beckham as trustee under the Deed of Trust. To do so, the Court must evaluate all of the factual allegations in Plaintiff's Original Petition in the light most favorable to Plaintiff, resolve all contested issues of substantive fact and any ambiguities of state law in Plaintiff's favor, and "then examine relevant state law and resolve all uncertainties in" Plaintiff's favor. *Davidson*, 819 F.3d at 765.

Applying that standard – although Plaintiff's Original Petition sues Mr. Kraus "as Substitute Trustee" and Beckham Capital Group LLC "as Trustee under the Deed of Trust" and does not include specific allegations or causes of action in Section VII of Plaintiff's Original Petition against either of these defendants – Plaintiff has alleged facts that might provide a reasonable basis for the Court to predict that Plaintiff might be able to recover against Mr. Kraus as substitute trustee or Beckham Capital Group LLC as Trustee under the Deed of Trust for breaching a duty as a trustee in a manner

that would give rise to an attempted wrongful foreclosure claim – if such a claim existed under Texas law. *See* Dkt. No. 1, Ex. C at 20 of 273, 23-24 of 273. "A claim of wrongful foreclosure cannot succeed, however, when no foreclosure has occurred." *Foster v. Deutsche Bank Nat'l Trust Co.*, 848 F.3d 403, 406 (5th Cir. 2017); *accord Smitherman v. Bayview Loan Servicing, LLC*, 727 F. App'x 787, 790 (5th Cir. 2018). Plaintiff relies heavily on the decision in *Beard v. Aurora Loan Services, LLC*, No. C.A. C-06-1142, 2006 WL 1350286 (S.D. Tex. May 17, 2006), but, in that case, the plaintiff "alleged that the Law Firm Defendants (as trustees) foreclosed on his home without cause and failed to give the notice required by law," *id*. at *6.

Plaintiff asks the Court to look to his First Amended Petition, which he seeks leave to file, but "[p]ost-removal filings may not be considered ... when or to the extent that they present new causes of action or theories not raised in the controlling petition filed in state court." *Griggs*, 181 F.3d at 700. And Texas Property Code § 51.007(b)'s state law procedural requirement that a plaintiff respond to a Texas Property Code § 51.007(a) verified denial within 30 days does not provide an exception to these federal law rules for determining improper joinder.

Defendants therefore have met their heavy burden in showing that Mr. Kraus as substitute trustee and Beckham Capital Group LLC as Trustee under the Deed of Trust – as non-diverse defendants in this case brought by Plaintiff Schutze Signature Homes, LLC, a Texas citizen – were improperly joined. *See Smallwood*, 385 F.3d at 575 ("In every case where a diverse defendant proves that the plaintiff's decision to join an in-state party is improper, the diverse defendant gains access to the federal courts.").

And, because once the Court determines that Defendants Beckham Capital Group LLC as Trustee under the Deed of Trust and Jason Kraus as Substitute Trustee were improperly joined, the Court should further order that Plaintiff's claims against Defendants Beckham Capital Group LLC as Trustee under the Deed of Trust and Jason Kraus as Substitute Trustee be dismissed without prejudice. See *Alviar v. Lillard*, 854 F.3d 286, 291-92 (5th Cir. 2017).

II.    Temporary restraining order

That leaves only the matter of whether the Court should grant Plaintiff's Motion for Temporary Restraining Order [Dkt. No. 8] against Defendant Fairview Investment Fund III, LP.

Plaintiff's primary complaint is that Defendants allegedly violated the TRO that the state court entered before removal. But violation of a court order is a matter for a contempt proceeding, which Plaintiff also seeks, *see* Dkt. No. 6, and does not itself establish each element for a TRO as outlined above.

Although Plaintiff's counsel pointed during oral argument to the November 1, 2019 Affidavit of Nolan Shutze, *see* Dkt. No. 8-1 at 259-253 of 278, Plaintiff's application for a TRO makes no attempt to explain how Mr. Shutze's affidavit testimony establishes that there is a substantial likelihood that Plaintiff will prevail on the merits of any of its existing claims against Fairview Investment Fund III, LP. Rather, Plaintiff's argument in its motion and at oral argument focused on the need to enforce the state court's TRO.

The Court should deny Plaintiff's Motion for Temporary Restraining Order [Dkt.

No. 8] because Plaintiff has failed to "clearly carr[y] the burden of persuasion," that is, its "burden of proof as to [a TRO's four] prerequisites." *Canal Auth.*, 489 F.2d at 573.

## Recommendation

The Court should determine that Defendants Beckham Capital Group LLC as Trustee under the Deed of Trust and Jason Kraus as Substitute Trustee were improperly joined, deny Plaintiff's Motion to Remand [Dkt. No. 9], order that Plaintiff's claims against Defendants Beckham Capital Group LLC as Trustee under the Deed of Trust and Jason Kraus as Substitute Trustee are dismissed without prejudice, and deny Plaintiff's Motion for Temporary Restraining Order [Dkt. No. 8] for the reasons explained above.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d

1415, 1417 (5th Cir. 1996).

DATED: November 5, 2019

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE